DICKINSON WRIGHT RLLP
Eric R. McDonough. Esq.
California State Bar No. 193956
3579 Valley Centre Dr, Suite 100
San Diego, CA 92130
Tel:     858-397-7412
Fax:     844-670-6009
Email: emcdonough@dickinson-wright.com

James E. Tyrrell III, Esq. (*Pro hac vice* pending)
1825 Eye Street N.W., Suite 900
Washington, D.C. 20006
Tel:     202-659-6934
Fax:     844-670-6009
Email: JTyrrell@dickinson-wright.com

*Attorneys for Plaintiff*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF CALIFORNIA**
**SACRAMENTO DIVISION**

| | |
|---|---|
| RUDOLPH "BUTCH" WARE,<br><br>     Plaintiff,<br><br>v.<br><br>SHIRLEY N. WEBER, in her official capacity as California secretary of state,<br><br>     Defendant. | Case No.:  2:26-at-00699<br><br>**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**<br><br><br>Date:<br>Time:<br>Location: |

i

# TABLE OF CONTENTS

I.    INTRODUCTION…………………………………………………………………………1

II.   FACTUAL BACKGROUND ...................................................................................... 2

    A.    The California Tax Return Disclosure Law…………………………………….2

    B.    Defendant Issued Shifting Deficiency Notices, Blocking Plaintiff's Candidacy…2

III.  ARGUMENT ............................................................................................................. 6

    A.    The Issuance of a Temporary Restraining Order is Appropriate Here…………….6

        1.    Plaintiff is Likely to Succeed on the Merits………………………………….6

            a.    Defendant Violated the First and Fourteenth Amendments (Count 1: 42 U.S.C. § 1983)……………………………………….6

            b.    Defendant Violated Procedural Due Process Under the Fourteenth Amendment (Count 2: 42 U.S.C. § 1983)……………………….....9

            c.    Defendant Violated the Equal Protection Clause of the Fourteenth Amendment (Count 3: 42 U.S.C. § 1983) ……………………... 11

        2.    Plaintiff Will Suffer Irreparable Harm Absent Emergency Relief………12

        3.    The Balance of Equities Tip Sharply in Plaintiff's Favor………………..12

        4.    Public Interest Strongly Favors Relief………………………………...…14

    B.    Issuance of a Temporary Restraining Order Against Further Actions of the Defendant is Appropriate Here ………………………………………………….14

    C.    Plaintiff Noticed Defendant………………………………………………...15

IV.   CONCLUSION................................................................................................... 15



## TABLE OF AUTHORITIES

Page(s)

Cases

*Alliance for the Wild Rockies v. Cottrell*,
632 F.3d 1127 (9th Cir. 2011) ................................................................................. 6

*Anderson v. Celebrezze*,
460 U.S. 780 (1983) ..................................................................................... Passim

*Armstrong v. Manzo*,
380 U.S. 545 (1965) ........................................................................................... 9

*Bullock v. Carter*,
405 U.S. 134 (1972) ....................................................................................... 7, 8

*Burdick v. Takushi*,
504 U.S. 428 (1992) ..................................................................................... 7, 11

*De La Fuente v. Padilla*,
930 F.3d 1101 (9th Cir. 2019) ...................................................................... 7, 8, 11

*Elrod v. Burns*,
427 U.S. 347 (1976) ......................................................................................... 12

*Eu v. San Francisco Democratic Comm.*,
489 U.S. 214 (1989) ........................................................................................... 9

*FCC v. Fox Television Stations, Inc.*,
567 U.S. 239 (2012) ......................................................................................... 10

*Grannis v. Ordean*,
234 U.S. 385 (1914) ........................................................................................... 9

*Griffin v. Padilla*,
408 F. Supp. 3d 1169 (E.D. Cal. 2019) ......................................................... 8, 13

*Lands Council v. McNair*,
537 F.3d 981 (9th Cir. 2008) ............................................................................. 6

*Lubin v. Panish*,
415 U.S. 709 (1974) ........................................................................................... 7

*Mathews v. Eldridge*,
424 U.S. 319  (1976) ......................................................................................... 9

*Melendres v. Arpaio*,
695 F.3d 990 (9th Cir. 2012) ........................................................................... 14

iii

*Mullane v. Cent. Hanover Bank & Tr. Co.*,
   339 U.S. 306, 70 S. Ct. 652 (1950) ...................................................................................... 9

*New York Times Co. v. United States*,
   403 U.S. 713 (1971) ........................................................................................................... 12

*Norman v. Reed*,
   502 U.S. 279 (1992) ..................................................................................................... 7, 8, 11

*Padilla*,
   No. 19-17000, 2019 WL 7557783 (9th Cir. Dec. 16, 2019) .............................................. 9

*Patterson v. Padilla*,
   451 P.3d 1171 (Cal. 2019) ....................................................................................... 2, 8, 13, 14

*Sammartano v. First Judicial Dist. Court*,
   303 F.3d 959 (9th Cir. 2002) ............................................................................................. 14

*Sanders Cnty. Republican Cent. Comm. v. Bullock*,
   698 F.3d 741 (9th Cir. 2012) ............................................................................................. 13

*Valle del Sol, Inc. v. Whiting*,
   732 F.3d 1006 (9th Cir. 2013) ........................................................................................... 13

*Williams v. Rhodes*,
   393 U.S. 23 (1968) ................................................................................................. 7, 8, 13, 14

*Winter v. Natural Resources Defense Council, Inc.*,
   555 U.S. 7 (2008) ................................................................................................................. 6

Statutes

42 U.S.C. § 1983................................................................................................... 2, 6, 9, 11

California Elections Code § 8902(a)................................................................................. 2

California Elections Code § 8902(b) ............................................................................... 3

California Elections Code § 8903(a)................................................................................. 2

California Elections Code § 8903(a)(1)(A) ..................................................................... 2

California Elections Code §§ 8902 and 8903 ....................................................... 1, 2, 3

U.S. Const. amend. I............................................................................................................ 7

U.S. Const. amend. XIV ................................................................................................... 11

iv

Rules

Fed. R. Civ. P. 65(a) ................................................................................................................ 14

## I.  **<u>INTRODUCTION</u>**

Plaintiff, Rudolph "Butch" Ware ("Plaintiff" or "Mr. Ware"), is a Green Party candidate for Governor of California.  He has been unconstitutionally excluded from the June 2, 2026, primary ballot by the Defendant Secretary of State Shirley N. Weber's ("Defendant" or "Secretary Weber") office.

This case presents three independent constitutional violations, all three of which warrant the emergency relief Plaintiff seeks. First, California Elections Code §§ 8902 and 8903 unconstitutionally condition ballot access on mandatory disclosure of five years of personal taxes. This requirement burdens First and Fourteenth Amendment rights in a manner that Defendant cannot justify under any level of scrutiny. In fact, the California Supreme Court struck down §§ 8902 and 8903 as applied to presidential candidates, but left the gubernatorial question expressly open. The application of §§ 8902 and 8903 to gubernatorial candidates is now before this Court.

Second, Defendant's administration of §§ 8902 and 8903 denied Plaintiff procedural due process guaranteed by the Fourteenth Amendment. Specifically, Defendant's office issued shifting, irreconcilable deficiency notices over a series of increasingly confusing and contradictory communications between March 7 through March 16, 2026. One of the emails arrived at 4:50 p.m. on March 16—ten minutes before the 5:00 p.m. statutory deadline.  It cited deficiencies that were not only new but demonstrably incorrect. Even after Plaintiff submitted a further complete corrected set of returns less than 24 hours later on March 17, 2026, Defendant's office refused to place Plaintiff's name on the ballot for governor.

Finally, Defendant's office failed to administer the ballot access requirements in a uniform manner that affords all candidates a fair and meaningful opportunity to comply, as required by the Equal Protection Clause of the Fourteenth Amendment. Specifically, Defendant's office claimed that the tax returns submitted by Plaintiff were deficient, but a review of the publicly available tax returns for other candidates reveals that the same rules were not applied to other candidates.

///

///

## II.   FACTUAL BACKGROUND

### A.   The California Tax Return Disclosure Law

In order to qualify as a gubernatorial candidate for the primary election ballot, California law requires individuals seeking candidacy to file with the Secretary of State "copies of every income tax return the candidate filed with the Internal Revenue Service in the five most recent taxable years . . . ." California Elections Code § 8902(a).

Prospective candidates must submit two copies of each tax return: "One copy of each tax return shall be identical to the version submitted to the Internal Revenue Service, without redactions, and shall not be subject to disclosure pursuant to this section. One copy shall be identical to the version submitted to the Internal Revenue Service but shall be redacted pursuant to this paragraph." California Elections Code § 8903(a)(1)(A). Under §§ 8902 and 8903, the deadline for submitting nomination documents for the 2026 election was Thursday, March 6, 2026 at 5:00 p.m. However, if notified by the Secretary of State's office of any deficiencies in their tax return submission, candidates were given until March 16, 2026 at 5:00 p.m. to cure.  California Elections Code § 8903(a).

Notably, the same statutes applied a similar disclosure requirement to presidential candidates. The California Supreme Court unanimously struck down the tax return disclosure requirement in *Patterson v. Padilla*, 451 P.3d 1171 (Cal. 2019), holding that it violated the California Constitution's mandate of an inclusive open presidential primary. The Court's core rationale was that the Legislature may not add substantive qualifications to those already specified in the Constitution, and that it is the voters—not the Legislature—who bear responsibility for judging whether a candidate's refusal to disclose financial information has electoral consequences. *See id*. at 1174.

### B.   Defendant Issued Shifting Deficiency Notices, Blocking Plaintiff's Candidacy

On June 2, 2026, the State of California will hold its Gubernatorial Primary Election in which registered voters will vote for their choice for the next Governor. Compl. ¶ 13.

Plaintiff resides in Santa Barbara, California.  He is a registered voter in California and a 2026 candidate for Governor of the State of California. Compl. ¶ 9. On Thursday, March 5, 2026,

2

Plaintiff timely submitted the requisite forms and documents to Defendant, in compliance with California Elections Code §§ 8902 and 8903. Compl. ¶ 18. The forms submitted included redacted and unredacted copies of Plaintiff's federal tax returns for the 2021, 2022, 2023, and 2024 tax years, as required under California Elections Code §§ 8902 and 8903.[1] Compl. ¶ 19. For purposes of submitting the tax returns to Defendant, the tax returns were collated and inspected for submission by a Certified Public Accountant (CPA) working for the Defendant. Compl. ¶ 20.

On March 7, 2026 (Saturday) at 3:07 p.m., Defendant's office contacted Plaintiff via email and claimed it "identified deficiencies that must be corrected." The deficiencies were to be corrected by March 16, 2026 at 5:00 p.m. The Defendant's office directed Plaintiff to resubmit corrected hard copies to the Election Division. Compl. ¶ 21. *See also* Compl. at Exhibit "A". Defendant alleged three deficiencies: (1) the redacted and unredacted versions of the tax returns for the years 2021 and 2024 did not match, (2) unredacted versions were not submitted for tax years 2022 and 2023 and (3) the CPA's name was inappropriately redacted. Compl. ¶ 22. *See also* Compl. at Exhibit "A".

Three days later, on March 10, 2026 (Tuesday) at 9:29 p.m., Defendant's office contacted Plaintiff via email and stated that the deficiencies articulated in the March 7, 2026 email were incorrect.  Instead, the Defendant now alleged that the only deficiency was the failure to submit unredacted versions of the 2022 and 2023 tax returns. Compl. ¶¶ 23-24. *See also* Compl. at Exhibit "B". Because Defendant's office changed its allegations, Plaintiff emailed Defendant's office on March 11, 2026 requesting further clarification. Compl. ¶ 25. *See also* Compl. at Exhibit "B".

On March 12, 2026 (Thursday) at 10:05 a.m., Defendant's office responded to Plaintiff's request for further clarification.  Backtracking, the Defendant's office sent the same list of deficiencies contained in its initial email of March 7, 2026. Compl. ¶ 26. *See also* Compl. at Exhibit "B".  With about two (2) business days left before the deadline, including March 16, 2026

---

[1] Plaintiff certified, consistent with California Elections Code § 8902(b), that his 2025 return had not yet been filed with the Internal Revenue Service. *See* Cal. Elec. Code § 8902(b) (where a candidate has not yet filed the most recent year's return, the candidate "shall submit a copy of the income tax return to the Secretary of State within five days of filing the return with the Internal Revenue Service"); § 8902(c) (the disclosure requirement "does not apply to any year in which the candidate was not required to file"). The Secretary of State's published guidance confirms this practice. Because Plaintiff's 2025 taxes had not yet been filed, this dispute concerns only Defendant's objections to the four returns Plaintiff was required to file.

3

(Monday) itself, Plaintiff had received contradictory emails from Defendant's office. Compl. ¶ 27. Five minutes later, on that same day, Plaintiff again requested further clarification from Defendant's office as to the specific defects with the tax returns. Compl. ¶ 28. *See also* Compl. at Exhibit "B". Defendant's office did not respond until the following day, leaving Plaintiff little time to determine which defects were actually at issue and to cure those purported defects. Compl. ¶ 29.

On March 13, 2026 (Friday) at 10:46 a.m., Defendant's office finally identified what it contended constituted deficiencies with Plaintiff's tax records. That same day, Plaintiff's campaign team prepared and sent the cured tax filings to Defendant's office. The submission was sent via FedEx Overnight delivery from Plaintiff's office in Santa Barbara to Defendant's office in Sacramento. Compl. ¶¶ 30-31.

Defendant's office did not take delivery over the weekend. It took delivery of the cured tax returns on March 16, 2026 (Monday) at 9:17 a.m. Compl. ¶ 32. On March 16, 2026 at 4:50 p.m.—approximately 7.5 hours after Defendant's office had received delivery of the cured tax returns—the Defendant's office contacted Plaintiff via email identifying additional deficiencies. Compl. ¶ 33. *See also* Compl. at Exhibit "B". Defendant's office's email at 4:50 p.m. further required Plaintiff to "resubmit corrected copies to the Election Division" that same day, "no later than 5:00 p.m. on Monday, March 16." *Id*. This ten-minute deadline was unrealistic. Moreover, when Plaintiff examined the deficiencies in the March 16, 2026 email, it became clear that the purported defects lacked any basis in the governing statute and were premised on mischaracterizations of Plaintiff's submissions. This demonstrated the arbitrary manner in which Defendant evaluated Plaintiff's nomination paperwork. Compl. ¶ 37.

Specifically, Defendant claimed that the redacted and unredacted 2022 tax returns were not identical with respect to Schedule C. However, Defendant's contention is incorrect, as Plaintiff demonstrated to Defendant's office via email. Compl. ¶ 38. *See also* Compl. at Exhibit "B". Defendant also contended that the submitted tax returns failed to comply with the redaction requirements set forth in § 8903. Compl. ¶ 39. *See also* Compl. at Exhibit "B". Defendant's position, however, is undermined by Defendant's own inconsistent application of the statute.

4

Compl. ¶ 39. A later review of Defendant's office's website revealed that Defendant permitted other candidates to submit tax returns that were not properly redacted in accordance with § 8903. *See* Compl. ¶ 42, *citing* T.W. 2021 Tax Return, Cal. Sec'y of State, https://elections.cdn.sos.ca.gov/statewide-elections/2026-primary/woodard-2021.pdf; T.W. 2022 Tax Return, Cal. Sec'y of State, https://elections.cdn.sos.ca.gov/statewide-elections/2026-primary/woodard-2022.pdf. *Compare* Exhibit "A". Other candidates were permitted to proceed without correction or objection of their filings and were published by Defendant's office without the same scrutiny directed at Plaintiff. Compl. ¶ 44.

To date, and despite the fact that on March 17, 2026 Plaintiff provided Defendant with yet another round of redacted and unredacted tax returns, Defendant has refused to accept Plaintiff's nomination paperwork. Compl. ¶ 46.

Plaintiff promptly pursued a ballot access challenge under state law, and litigated that matter through an adverse final decision. Specifically, on March 19, 2026, Plaintiff filed an action in state court. On March 26, 2026, a hearing was held and the state court rejected the Plaintiff's claims. As a result, Plaintiff brought this action in federal court.

The timing of this filing reflects the procedural posture of Plaintiff's earlier efforts to obtain relief in state court and the events that occurred following that proceeding. On or about March 27, 2026, Defendant published a list of the 61 gubernatorial candidates and their tax returns on their website. *See* Cal. Sec'y of State, *Candidate Tax Return Disclosures*, https://www.sos.ca.gov/elections/upcoming-elections/primary-election-june-2-2026/candidate-tax-return (last visited Apr. 27, 2026). Plaintiff diligently reviewed each of the 61 gubernatorial candidates' tax returns. That took time. He discovered that other candidates were granted ballot access despite their tax returns having the same deficiencies that Defendant alleged were contained in Plaintiff's. On or about April 9, Plaintiff consulted with counsel specializing in elections and constitutional law. On or about April 11, conflicts were cleared. On April 14, 2026, Plaintiff formally retained counsel. While gathering information, confirming information, and beginning the related research, it became clear that Defendant's actions gave rise to distinct claims under the

///

5

United States Constitution, including a claim under the Equal Protection Clause that was not ripe for consideration in the prior state action.

On or about April 24, 2026, Plaintiff made reasonable efforts to notify Defendant of this lawsuit by calling Defendant's office and informing their legal representative that Plaintiff would be filing suit and seeking immediate injunctive relief. Plaintiff acted diligently to bring this federal challenge. The short interval between the state and federal filings reflects a reasonable and good-faith effort to evaluate and assert federal rights.

## III.    **ARGUMENT**

For the reasons set forth below, all four factors governing preliminary injunctive relief weigh in Plaintiff's favor.

### A.   The Issuance of a Temporary Restraining Order is Appropriate Here

The standard for granting a temporary restraining order and a preliminary injunction under Federal Rule 65 is well established. The moving party must show that "[1] he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008). The Ninth Circuit has adopted the "serious questions" test, which is articulated as follows: "'A preliminary injunction is appropriate when a plaintiff demonstrates … that serious questions going to the merits were raised and the balance of hardships tips sharply in the plaintiff's favor.'" *See Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011) (ellipses in original), *quoting Lands Council v. McNair*, 537 F.3d 981, 987 (9th Cir. 2008).

#### 1.   Plaintiff is Likely to Succeed on the Merits

##### a.   Defendant Violated the First and Fourteenth Amendments (Count 1: 42 U.S.C. § 1983)

"The impact of candidate eligibility requirements on voters implicates basic constitutional rights." *Anderson v. Celebrezze*, 460 U.S. 780, 788 (1983). Under the First and Fourteenth Amendments, courts must balance the character and magnitude of the injury to the constitutional right against "the precise interests put forward by the State as justifications for the burden imposed by its rule, taking into consideration the extent to which those interests make it necessary to burden



6

the plaintiff's rights." *Burdick v. Takushi*, 504 U.S. 428, 434 (1992); *Anderson*, 460 U.S. at 789. Where the burden on the right is severe, strict scrutiny applies, meaning that it cannot pass constitutional muster unless it is narrowly tailored to advance a compelling state interest. *See De La Fuente v. Padilla*, 930 F.3d 1101, 1105 (9th Cir. 2019), *citing Norman v. Reed*, 502 U.S. 279, 289 (1992).

Here, Defendant's application of the tax return disclosure law lacks constitutional justification and reflects selective or inconsistent enforcement that cannot satisfy strict scrutiny. Defendant's actions impose a severe burden on Plaintiff's First and Fourteenth Amendment right to participate in the electoral process free from unjustified government burdens. Compl. ¶ 49, *citing* U.S. Const. amend. I.    Federal courts apply this *Anderson-Burdick* framework to state-administered ballot access regimes governing state office, just as they do to ballot access regimes governing federal office. *See, e.g., Bullock v. Carter*, 405 U.S. 134, 143 (1972) (invalidating Texas filing-fee scheme governing primary candidates for state office and emphasizing that ballot-access laws affecting candidates "always have at least some theoretical, correlative effect on voters"); *Lubin v. Panish*, 415 U.S. 709, 716 (1974) (striking down California's primary-election filing-fee statute under the First and Fourteenth Amendments and recognizing that the right to a place on the ballot "is intertwined with the rights of voters"); *Williams v. Rhodes*, 393 U.S. 23, 30 (1968) (state ballot-access restrictions burden "two different, although overlapping, kinds of rights"—the rights of association and effective voting). The federal constitutional inquiry does not turn on whether the office at issue is presidential, gubernatorial, or otherwise; it turns on the character and magnitude of the burden imposed.  The California Supreme Court struck down an identical tax return disclosure law applied to presidential candidates.  Gubernatorial candidates are no different. In light of the constitutional interests and the California Supreme Court's reasoning, the Plaintiff will succeed on the merits. The California Supreme Court unanimously held that the tax return disclosure requirement conflicted with the California Constitution's mandate of an inclusive open presidential primary:

> The Legislature may well be correct that a presidential candidate's income tax returns could provide California voters with important information. But article II, section 5(c) embeds in the state Constitution the principle that, ultimately, it is the voters who must



> decide whether the refusal of a 'recognized candidate[ ] . . .' to make such information available to the public will have consequences at the ballot box.

451 P.3d 1171, 1174 (Cal. 2019).

The Court's core rationale was that the Legislature may not add substantive qualifications to those already specified in the state Constitution, and that it is the voters—not the Legislature—who bear responsibility for judging whether a candidate's refusal to disclose financial information has electoral consequences. *See id*. Although *Patterson* rested on the California Constitution's open-primary clause, the voter-sovereignty principle it articulated is independently embedded in federal First and Fourteenth Amendment ballot-access doctrine. The *Anderson-Burdick* framework treats candidate eligibility requirements as constitutionally suspect precisely because they restrict the universe of choices available to the electorate. *See Anderson*, 460 U.S. at 786; *Williams*, 393 U.S. at 30; *Bullock*, 405 U.S. at 142–43. When a State conditions a place on the ballot on the disclosure of substantive personal information that the federal Constitution does not require—rather than enforcing a generally applicable, content-neutral administrative regulation—it has effectively imposed an extra-statutory qualification on candidacy that operates as a severe burden under *Anderson-Burdick* and triggers strict scrutiny. *See De La Fuente*, 930 F.3d at 1105; *Norman*, 502 U.S. at 289. Sections 8902 and 8903 do precisely that: the statutes do not regulate the time, place, or manner of nomination paperwork.  Instead, they condition ballot access itself on the public disclosure of five years of personal financial history. And Defendant cannot identify a compelling state interest narrowly served by that requirement, particularly where the California Supreme Court itself has already concluded that informing the electorate about a candidate's finances is a judgment reserved to the voters. *Patterson*, 451 P.3d at 1174.

Previously, this Court issued an order granting a request for a preliminary injunction that prohibited Defendant from enforcing the tax disclosure laws against presidential candidates. *See Patterson*, 451 P.3d 1171, 1173, n.1 (2019), *citing Griffin v. Padilla*, 408 F. Supp. 3d 1169, 1185 (E.D. Cal. 2019), *appeal dismissed and remanded,* No. 19-17000, 2019 WL 7557783 (9th Cir. Dec. 16, 2019), *and vacated*, No. 2:19-CV-01477-MCE-DB, 2020 WL 1442091 (E.D. Cal. Jan.

///

8

13, 2020).[2] In so ruling, this Court determined, that the plaintiffs were likely to demonstrate that the tax return disclosure laws violate the First Amendment to the United States Constitution and the equal protection clause of the Fourteenth Amendment to the United States Constitution. *See id.* ("the Act creates what amounts to a functional bar against the ability to cast an effective vote for a candidate who elects not to disclose his or her tax returns. It further interferes with the ability of both individuals and political parties to select the individual presidential candidate of their choice to act as the 'standard bearer who best represents [their] ideologies and preferences.'") *quoting Eu v. San Francisco Democratic Comm.*, 489 U.S. 214, 224 (1989).

The federal Constitution requires no less protection for that judgment than the California Constitution does. That principle governs the instant matter. As in *Patterson*, Defendant's actions here function as an impermissible barrier to ballot access and cannot be sustained.

### b. Defendant Violated Procedural Due Process Under the Fourteenth Amendment (Count 2: 42 U.S.C. § 1983)

The Fourteenth Amendment's Due Process Clause prohibits the government from depriving a person of a protected interest through arbitrary or capricious administrative action. A review of the facts at issue in this case reveals that Defendant's conduct violates Plaintiff's procedural due process rights as guaranteed by the Fourteenth Amendment.

"The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976), *quoting Armstrong v. Manzo*, 380 U.S. 545, 552 (1965); *see Grannis v. Ordean*, 234 U.S. 385, 394 (1914). Due process requires notice reasonably calculated, under all circumstances, to apprise interested parties and afford them an opportunity to present their objections. *See Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314, 70 S. Ct. 652, 657 (1950).

Here, Defendant's exclusion of Plaintiff from the ballot was carried out without constitutionally sufficient procedural safeguards, including adequate notice, a meaningful opportunity to be heard, or a fair and consistent application of the governing standard. Plaintiff possesses a protected liberty interest in seeking elective office and participating in the electoral

---

[2] The United States Court of Appeals for the Ninth Circuit found that the issues were mooted by the California Supreme Court's decision in *Patterson*. *See Griffin v. Padilla*, No. 19-17000, 2019 WL 7557783, at *1 (9th Cir. Dec. 16, 2019).

DICKINSON WRIGHT
ATTORNEYS AT LAW

process, and Defendant's conduct expressly violated Plaintiff's constitutional right. Specifically, Defendant deprived Plaintiff of his protected liberty interests by providing shifting and inconsistent explanations regarding Plaintiff's tax returns, as included in Plaintiff's nomination paperwork. *See* Compl. ¶¶ 21-34; 62. Defendant continued depriving Plaintiff of his protected liberty interests by delaying responses to Plaintiff and even postponing additional deficiency allegations until ten minutes before the statutory deadline, leaving Plaintiff no meaningful opportunity to review, respond to, or cure the alleged issues. *See* Compl. ¶¶ 21-34; 63. The ten-minute deadline imposed by Defendant was unreasonable and impossible for Plaintiff to meet. Within the compressed timeframe and with inaccurate and misleading guidance, Plaintiff could not reasonably review the alleged deficiencies, consult with advisors, gather and verify responsive materials, and submit the requested documentation. The deadline thus operated not as a meaningful opportunity to cure, but as a functional denial of any opportunity to be granted access to the California gubernatorial ballot. Compl. ¶ 35.

Moreover, the government must provide fair warning of the conduct that will result in the deprivation of a protected interest. *See FCC v. Fox Television Stations, Inc.*, 567 U.S. 239, 253 (2012). Defendant did not provide fair warning here. Defendant's shifting and inconsistent deficiency notices failed to provide Plaintiff with fair warning of the standards he was required to meet, rendering the disqualification constitutionally infirm. This is regardless of the underlying facial validity of the statute. Defendant's conduct denied Plaintiff a meaningful opportunity to cure the purported deficiencies under a consistent set of requirements. This effectively excluded Plaintiff from the ballot without notice reasonably calculated to apprise him of the alleged deficiencies in time to prevent an improper deprivation of his rights.

Absent an order issued by this Court, Plaintiff faces deprivation of his constitutionally protected First Amendment rights without due process of law, in direct violation of the Fourteenth Amendment.

///

///

///



10

### c. Defendant Violated the Equal Protection Clause of the Fourteenth Amendment (Count 3: 42 U.S.C. § 1983)

The United States Constitution requires that ballot access rules be applied in a manner that affords candidates a fair and meaningful opportunity to comply with applicable requirements. The facts here demonstrate that Defendant's conduct is a direct infringement on Plaintiff's Fourteenth Amendment rights under the Equal Protection Clause.

The Fourteenth Amendment to the United States Constitution ensures that no state shall deny to any person equal protection of the laws. Compl. ¶ 67, *citing* U.S. Const. amend. XIV. Under the First and Fourteenth Amendments, the Court must balance the character and magnitude of the constitutional injury against "the precise interests put forward by the State as justifications." *Burdick*, 504 U.S. at 432; *Anderson*, 460 U.S. at 789. If it is a severe burden on the constitutional right, then strict scrutiny applies—the rule must be narrowly tailored and advance a compelling state interest. *See De La Fuente*, 930 F.3d at 1105, *citing Norman*, 502 U.S. at 289.

Defendant here treated Plaintiff differently than other similarly situated individuals and, in doing so, ultimately denied Plaintiff a right enshrined in the constitution.  It did so by (1) providing shifting and contradictory explanations regarding the alleged deficiencies in Plaintiff's tax return submission, (2) failing to articulate a consistent standard for compliance, and (3) delaying identifying additional purported defects until ten minutes preceding the statutory deadline, thereby depriving Plaintiff of any meaningful opportunity to cure.  Through these procedures and objections, Defendant denied Plaintiff the right to be a candidate for office, while allowing others with similar "deficiencies" to pursue elected office. The procedural history giving rise to this disparate treatment is set forth above. *See supra* at 2–7. The dispositive equal protection point is comparative: Defendant applied these shifting and arbitrary standards to Plaintiff while accepting comparable—and in some respects materially less compliant—submissions from similarly situated candidates without objection.

Here, Defendant permitted other similarly situated candidates to proceed with comparable filings without correction or objection, resulting in disparate treatment among similarly situated candidates.  For example, a review of Defendant's office's website reveals that Defendant has permitted other candidates, such as T.W., to submit tax returns that are not redacted

11



in accordance with § 8903(a)(1)(B). *See* Compl. ¶ 42, *citing* T.W. 2021 Tax Return, Cal. Sec'y of State, https://elections.cdn.sos.ca.gov/statewide-elections/2026-primary/woodard-2021.pdf; T.W. 2022 Tax Return, Cal. Sec'y of State, https://elections.cdn.sos.ca.gov/statewide-elections/2026-primary/woodard-2022.pdf.  *Compare* Exhibit "A". Other candidates were permitted to proceed without correction or objection to their filings and were published by Defendant's office without the same scrutiny directed at Plaintiff. Compl. ¶ 44. There is no rational basis for any differential treatment of Plaintiff's nomination paperwork.  Such differential treatment violates the Equal Protection Clause.

As a result of Defendant's violation of Plaintiff's Fourteenth Amendment rights, Plaintiff has been excluded from the California gubernatorial ballot and is therefore entitled to declaratory and injunctive relief restoring his access to the ballot and preventing further enforcement of the challenged conduct.

## 2.  Plaintiff Will Suffer Irreparable Harm Absent Relief

Plaintiff stands to suffer irreparable harm if he does not appear on the ballot. Printing and mailing ballots without Plaintiff's name appearing as a candidate when he has qualified as such is a violation of Plaintiff's constitutional rights. "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976), *citing New York Times Co. v. United States*, 403 U.S. 713 (1971). This harm is not speculative—it is certain and imminent. Defendant has finalized her disqualification determination. Monetary damages cannot compensate Plaintiff for the denial of his right to run for office, nor can monetary damages compensate California voters for the denial of their right to cast a ballot for him. Indeed, if ballots are printed and mailed without Plaintiff's name on them, the harm will be done, rendering the case moot and Defendant's transgressions non-redressable.

## 3.  The Balance of Equities Tip Sharply in Plaintiff's Favor

A series of demonstrably incorrect and procedurally arbitrary deficiency notices should not be permitted to override Plaintiff's constitutional rights.

Plaintiff's complete and permanent exclusion from the June 2026 primary election is a loss of constitutional magnitude that cannot be undone. Any administrative inconvenience to



Defendant of including one additional candidate name on a ballot that has yet to be finalized does not register as a significant hardship. When measured against the magnitude of the constitutional harm, the administrative inconvenience is negligible.

In *Griffin*, this Court highlighted that "[t]he public interest served by ensuring that individual voters may associate for the advancement of political beliefs and cast a vote for their preferred candidate for President is extraordinary." *Griffin*, 408 F. Supp. 3d at 1186, *appeal dismissed and remanded*, No. 19-17000, 2019 WL 7557783 (9th Cir. Dec. 16, 2019), and *vacated*, No. 2:19-CV-01477-MCE-DB, 2020 WL 1442091 (E.D. Cal. Jan. 13, 2020), *citing Williams*, 393 U.S. at 30-31, 89 S.Ct. 5. The Court in *Griffin* further articulated that the State of California "'can derive no legally cognizable benefit from being permitted to further enforce an unconstitutional limit on political speech.'" *Id*., *quoting Sanders Cnty. Republican Cent. Comm. v. Bullock*, 698 F.3d 741, 749 (9th Cir. 2012). "[I]t is 'clear that it would not be equitable or in the public's interest to allow the state . . . to violate the requirements of federal law, especially when there are no adequate remedies available.'" *Id* (*quoting Valle del Sol, Inc. v. Whiting*, 732 F.3d 1006, 1029 (9th Cir. 2013)).

Both the United States Supreme Court and the California Supreme Court have rejected justifications of administrative convenience when weighed against the constitutional interests of voters and candidates in ballot access. *See Williams*, 393 U.S. at 31–33 (Ohio's asserted interests in administrative regularity and ballot order did not justify excluding the American Independent Party); *Anderson*, 460 U.S. at 805–06 (administrative interests in voter education and political-party stability did not outweigh the candidate's and voters' First and Fourteenth Amendment interests); *Patterson*, 451 P.3d at 1183–84 (the State's asserted interest in voter information could not justify the burden the tax-disclosure law placed on the electorate's ability to choose its candidates).

The asymmetry of the two potential erroneous outcomes further drives this analysis. If this Court grants Plaintiff's motion and Plaintiff ultimately loses on the merits, the consequence is that California voters had the opportunity to vote for Plaintiff. If this Court denies Plaintiff's motion and Plaintiff ultimately prevails on the merits (which he is likely to do) no remedy can

13

restore his position. The election will have been held, the results certified, and the harm made permanent. On the balance, the equities clearly favor granting relief.

### 4. Public Interest Strongly Favors Relief

Where a candidate has been excluded from a ballot through an unconstitutional law or an arbitrary administrative process, the public interest does not favor preserving that exclusion. *See, e.g., Williams v. Rhodes*, 393 U.S. 23, 34–35 (1968) (ordering Ohio to place excluded party on the general-election ballot); *Anderson v. Celebrezze*, 460 U.S. 780, 806 (1983) (invalidating Ohio's early filing deadline and recognizing the constitutional interest of voters and candidates in unimpeded ballot access); *Patterson*, 451 P.3d at 1184 (rejecting California's tax-disclosure ballot bar in part because it impermissibly narrowed the universe of candidates from whom voters could choose). The Ninth Circuit has long recognized that "it is always in the public interest to prevent the violation of a party's constitutional rights." *Sammartano v. First Judicial Dist. Court*, 303 F.3d 959, 974 (9th Cir. 2002); *accord Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012). The integrity of the electoral process depends on the government's compliance with constitutional limits, not merely on the orderly administration of facially unconstitutional procedures.

The June 2026 primary is a significant event in California politics, and the voters of California are entitled to the opportunity to consider all qualified candidates, including Plaintiff. Denying Plaintiff ballot access would not only infringe upon Plaintiff's constitutional rights, but would also harm his supporters by depriving them of a meaningful opportunity to support and vote for their preferred candidate. The public interest weighs against such exclusion, as it limits voter choice and undermines confidence that the electoral process is being administered in a fair and lawful manner. By excluding Plaintiff from the ballot, Defendant is jeopardizing the very principles of our democracy. For these reasons, issuing an injunction is in the public interest.

### B. Issuance of a Temporary Restraining Order Against Further Actions of the Defendant is Appropriate Here

This Court should also issue a temporary restraining order to prevent Defendant's ongoing violations of the United States Constitution. The Verified Complaint and the above arguments establish that, unless this Court grants immediate relief, Plaintiff will suffer "immediate and irreparable injury." Fed. R. Civ. P. 65(a). *See also* Compl., *passim*. Further, Defendant's

14

ongoing violations of the United States Constitution threaten to undermine the integrity and fairness of the election in ways that cannot be traced or remedies after the fact.

### C. Plaintiff Noticed Defendant

On or about April 24, 2026, Plaintiff made reasonable efforts to notify Defendant about this lawsuit by calling Defendant's office and informing them that Plaintiff would be filing suit and seeking immediate injunctive relief. Based on the pendency of the need to begin printing ballots, as well as the threat that Defendant's conduct poses to Plaintiff's fundamental rights and the integrity of the electoral process, this Court should grant Plaintiff's request for a temporary restraining order.

## IV. <u>CONCLUSION</u>

This case presents a straightforward but urgent constitutional issue. California cannot condition a candidate's access to the gubernatorial primary ballot on the submission of personal tax returns. This requirement violates the First and Fourteenth Amendments to the United States Constitution. Moreover, the administration of this requirement, as applied to the Plaintiff, compounded the constitutional violation. Here, Defendant used procedurally arbitrary process and treated Plaintiff differently from other candidates. The Plaintiff was denied fair notice and a meaningful opportunity to comply. Ultimately, this led to him being rejected by the Defendant as a candidate for the office of Governor of California.

For the reasons stated above, Plaintiff respectfully requests that this Court issue a temporary restraining order directing Defendant to include Plaintiff's name on the June 2, 2026 California gubernatorial primary ballot and cease its unconstitutional practices.

///

///

///

///

///

///

///



15

Dated: April 27, 2026.

Respectfully submitted,

**DICKINSON WRIGHT RLLP**

*/s/ Eric R. McDonough*

Eric R. McDonough. Esq.
California State Bar No. 193956
3579 Valley Centre Dr, Suite 100,
San Diego, CA 92130
Tel:    858-397-7412
Fax:    844-670-6009
Email: emcdonough@dickinson-wright.com

James E. Tyrrell III, Esq. (*Pro hac vice*
pending)
1825 Eye Street N.W., Suite 900
Washington, D.C. 20006
Tel:    202-659-6934
Fax:    844-670-6009
Email: JTyrrell@dickinson-wright.com

*Attorneys for Plaintiff*


DICKINSON WRIGHT
ATTORNEYS AT LAW

16