**DICKINSON WRIGHT RLLP**
Eric R. McDonough. Esq.
California State Bar No. 193956
3579 Valley Centre Dr, Suite 100
San Diego, CA 92130
Tel:     858-397-7412
Fax:     844-670-6009
Email: emcdonough@dickinson-wright.com

James E. Tyrrell III, Esq. (*Pro hac vice* pending)
1825 Eye Street N.W., Suite 900
Washington, D.C. 20006
Tel:     202-659-6934
Fax:     844-670-6009
Email: JTyrrell@dickinson-wright.com

*Attorneys for Plaintiff*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF CALIFORNIA**
**SACRAMENTO DIVISION**

| | |
|---|---|
| RUDOLPH "BUTCH" WARE,<br><br>               Plaintiff,<br><br>v.<br><br>SHIRLEY N. WEBER, in her official capacity as California secretary of state,<br><br>               Defendant. | Case No.: 2:26-cv-01643-WBS SCR<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE COMPLAINT**<br><br><br>Date: August 3, 2026<br>Time: 1:30 p.m.<br>Location: 5<br>Judge: Hon. William B. Shubb |

DICKINSON WRIGHT
ATTORNEYS AT LAW

# TABLE OF CONTENTS

I.      INTRODUCTION………………………………………………………………1

II.     STANDARD OF REVIEW........................................................................... 1

III.    ARGUMENT .............................................................................................. 2

    A.      The Case Is Not Moot Because It Is Capable of Repetition, Yet Evading Review……………………………………………………………………….2

        1.      Election-Cycle Ballot-Access Disputes Are the Paradigm Case for the Exception…………………………………………………………….2

        2.      The Challenged Requirement Is Capable of Repetition as to Plaintiff…...3

    B.      The Ripeness Argument Fails for the Same Reasons……………………………..4

    C.      The Complaint States an *Anderson-Burdick* Claim…………………….……..5

        1.      Conditioning Ballot Access on Compelled Disclosure of Personal Financial Records Is a Severe Burden…………………………………….....5

        2.      *Griffin v. Padilla* Held That Exact Scheme Triggers Strict Scrutiny…..…7

        3.      The Requirement Fails Even Intermediate Scrutiny………………………7

    D.      The Complaint States a Procedural Due Process Claim…………………………..8

    E.      The Complaint States an Equal Protection Claim…………………………………9

IV.     CONCLUSION.................................................................................... 11



i

## TABLE OF AUTHORITIES

Page(s)

Cases

*Anderson v. Celebrezze*,
460 U.S. 780 (1983) ................................................................................................. 5, 7, 8

*Ariz. Green Party v. Reagan*,
838 F.3d 983 (9th Cir. 2016) ................................................................................................. 6

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ................................................................................................. 1, 10

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ................................................................................................. 1, 2

*Bullock v. Carter*,
405 U.S. 134 (1972) ................................................................................................. 6

*Burdick v. Takushi*,
504 U.S. 428 (1992) ................................................................................................. 5, 7, 8

*De La Fuente v. Padilla*,
930 F.3d 1101 (9th Cir. 2019) ................................................................................................. 6

*FEC v. Wis. Right to Life, Inc.*,
551 U.S. 449 (2007) ................................................................................................. 2

*Gerstein v. Pugh*,
420 U.S. 103 (1975) ................................................................................................. 3

*Griffin v. Padilla*,
408 F. Supp. 3d 1169 (E.D. Cal. 2019) ................................................................................................. 1, 7

*Joyner v. Mofford*,
706 F.2d 1523 (9th Cir. 1983) ................................................................................................. 3

*Lubin v. Panish*,
415 U.S. 709 (1974) ................................................................................................. 6

*Meyer v. Grant*,
486 U.S. 414 (1988) ................................................................................................. 8

*Nordlinger v. Hahn*,
505 U.S. 1 (1992) ................................................................................................. 10

*Patterson v. Padilla*,
8 Cal. 5th 220 (2019) ................................................................................................. 8

*Porter v. Jones*,
319 F.3d 483 (9th Cir. 2003) ............................................................... 2, 3, 4, 5

*Purcell v. Gonzalez*,
549 U.S. 1 (2006) ................................................................................... 1

*Rosenstiel v. Rodriguez*,
101 F.3d 1544 (8th Cir. 1996) ............................................................... 4

*Snowden v. Hughes*,
321 U.S. 1 (1944) .......................................................................... 8, 9, 10

*Storer v. Brown*,
415 U.S. 724 (1974) ............................................................................... 3

*U.S. Term Limits, Inc. v. Thornton*,
514 U.S. 779 (1995) ............................................................................... 6

*Vill. of Willowbrook v. Olech*,
528 U.S. 562 (2000) ............................................................................... 9

*Williams v. Rhodes*,
393 U.S. 23 (1968) ................................................................................ 6

Constitutional Provisions & Statutes

U.S. Const. amend. I ....................................................................... passim

U.S. Const. amend. XIV ................................................................. passim

42 U.S.C. § 1983 ............................................................................. passim

Cal. Elec. Code § 8902 .................................................................... passim

Cal. Elec. Code § 8903 .................................................................... passim

## I.   **INTRODUCTION**

The Secretary's motion to dismiss asks this Court to declare that a serious constitutional question — whether California may condition access to the gubernatorial ballot on the compelled public disclosure of five years of a candidate's personal tax returns — can never be answered by any court. That cannot be right. The Secretary's own timing arguments prove the point: she contends the case is moot because the June 2, 2026 primary is upon us, and simultaneously that any challenge tied to the next gubernatorial election in 2030 is unripe. The gap between those two positions is precisely the space the "capable of repetition, yet evading review" doctrine was designed to fill. Ballot-access disputes governed by fixed election calendars are the paradigmatic case for that exception, and this one fits it squarely.

On the merits, the Secretary asks the Court to resolve contested constitutional and factual questions on the pleadings — the opposite of what Rule 12(b)(6) permits. Her lead argument, that the tax-return requirement is not a "severe burden," asks this Court to disagree, as a matter of law and at the pleadings stage, with another judge of this District who held on the identical statutory scheme that conditioning ballot access on compelled tax disclosure triggers strict scrutiny. *See Griffin v. Padilla*, 408 F. Supp. 3d 1169 (E.D. Cal. 2019). Whatever the ultimate merits, a claim that a court in this District has already sustained is not one that fails as a matter of law. The Secretary's due process and equal protection arguments likewise depend on resolving factual disputes and drawing inferences against Plaintiff, which a motion to dismiss forbids.

This Court's denial of Plaintiff's motion for a temporary restraining order does not change the analysis. That ruling turned on equitable and timing considerations under *Purcell v. Gonzalez*, 549 U.S. 1 (2006) — not on the legal sufficiency of the Complaint. A motion to dismiss tests only whether Plaintiff has pleaded cognizable claims. He has. The motion should be denied.

## II.   **STANDARD OF REVIEW**

On a motion to dismiss under Rule 12(b)(6), the Court "accept[s] the plaintiff's allegations as true and construe[s] them in the light most favorable to the plaintiff." A complaint survives if it contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S.

1

544, 570 (2007)). Plausibility is not probability; a well-pleaded complaint may proceed "even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (internal quotation marks omitted).

These principles are dispositive of much of the Secretary's motion. Her merits arguments repeatedly ask the Court to weigh evidence — whether the burden imposed by the disclosure scheme is in fact "slight," whether Plaintiff's returns in fact matched, whether comparator candidate Woodard was in fact treated the same — and to resolve those questions in her favor. That is impermissible at this stage. The only question is whether the Complaint pleads cognizable claims, taking its factual allegations as true.

To the extent the Secretary invokes Rule 12(b)(1) on mootness and ripeness, the Court likewise "assumes that the allegations in the complaint are true and draws all reasonable inferences in the plaintiff's favor." The Secretary raises only a facial challenge to jurisdiction, so the same deferential standard applies.

### III.  <u>ARGUMENT</u>

**A.  The Case Is Not Moot Because It Is Capable of Repetition, Yet Evading Review.**

The Secretary contends the case is moot because the June 2, 2026 primary will conclude and Plaintiff can no longer be added to that ballot. But it is black-letter law that a case is not moot where the challenged action is "capable of repetition, yet evading review." The exception applies when "(1) the duration of the challenged action is too short to be fully litigated before it ceases, and (2) there is a reasonable expectation that the plaintiff[] will be subjected to the same action again." *FEC v. Wis. Right to Life, Inc.*, 551 U.S. 449, 462 (2007) (internal quotation marks omitted). Both elements are satisfied here.

***1.  Election-cycle ballot-access disputes are the paradigm case for the exception.***

The Supreme Court has repeatedly held that "election cases" are the classic context for the capable-of-repetition exception, precisely because "the inherently brief duration of an election is almost invariably too short to enable full litigation on the merits." *Porter v. Jones*, 319 F.3d 483, 490 (9th Cir. 2003). The Ninth Circuit has recognized that "[b]ecause of the extremely short



2

deadlines associated with elections and the ordinarily longer time required to complete litigation, cases involving election issues are rarely moot even though the particular election is over." *Joyner v. Mofford*, 706 F.2d 1523, 1527 (9th Cir. 1983) (quoted in *Porter*, 319 F.3d at 490). The Supreme Court applied this rule to ballot-access and election-law cases in *Storer v. Brown*, 415 U.S. 724, 737 n.8 (1974), and numerous progeny. *See also Gerstein v. Pugh*, 420 U.S. 103, 110 n.11 (1975) (exception applies where the issue will persist though "the constant existence of a class of persons suffering the deprivation is certain").

The first prong is plainly met. The interval between the tax-return submission deadline (88 days before the election, *see* Cal. Elec. Code § 8902(a)) and the election itself is a matter of weeks. As the Secretary's own briefing on the TRO emphasized, once the certified candidate list is transmitted, the window to alter the ballot closes almost immediately, and the election proceeds on a fixed statutory calendar that no litigant can slow. That is the very definition of an action "too short to be fully litigated before it ceases." The Secretary cannot simultaneously argue that the election timeline is too compressed to permit relief and that the same timeline does not "evade review." The two propositions are mirror images: the compression that defeated Plaintiff's TRO is exactly what satisfies the first prong of the mootness exception.

The Secretary's reliance on *Wisconsin Right to Life* for the contrary proposition is misplaced. There, the Court found the exception applicable and reached the merits; its observation that a party could sometimes plan litigation "well in advance" addressed the peculiar facts of recurring advertising blackout windows, not the fixed, non-negotiable deadlines of a statewide primary. Here, by contrast, a candidate cannot know he will be excluded from the ballot until the Secretary rejects his submission — which, by statute, occurs only weeks before the election. There is no earlier moment at which Plaintiff could have litigated the constitutionality of the disclosure requirement "as applied" to his exclusion, because the exclusion had not yet happened.

### 2. *The challenged requirement is capable of repetition as to Plaintiff.*

The second prong requires a "reasonable expectation" — not a certainty — that Plaintiff will be subject to the same action again. *Porter*, 319 F.3d at 490. The Ninth Circuit does not demand that a plaintiff prove his future candidacy with metaphysical certainty; it asks whether the

3

controversy is likely to recur. Plaintiff is the Green Party's 2026 nominee for Governor. He has already once sought the State's highest office. A candidate who has mounted a gubernatorial campaign, secured a party nomination, and litigated his exclusion through the state courts and now this Court has plainly demonstrated a "reasonable expectation" of running again — and of again confronting §§ 8902 and 8903, which apply to every gubernatorial candidate in every cycle.

Courts have consistently found the repetition prong satisfied on far thinner records. In *Rosenstiel v. Rodriguez*, 101 F.3d 1544, 1548–49 (8th Cir. 1996), the court held a candidate's challenge to ballot procedures was capable of repetition based simply on his continued political involvement. The exception does not require the plaintiff to "make an affirmative showing" that he will run again with certainty; it is enough that the statutory scheme will predictably govern him if he does, and that nothing about his circumstances makes future candidacy implausible. *See Porter*, 319 F.3d at 490. The Secretary's demand for a pleaded, definite intention to run in 2030 imposes a burden the doctrine does not require, and it is particularly inappropriate on a motion to dismiss, where all inferences run in Plaintiff's favor.

Critically, the requirement challenged here — mandatory disclosure of five years of tax returns — is a fixed feature of the Elections Code that will confront Plaintiff, and every other gubernatorial candidate, in identical form in 2030 and beyond. This is not a one-off administrative decision unlikely to recur. It is a standing statutory command. The "same action" will occur again to the same complaining party as a matter of statutory certainty if Plaintiff runs, and the reasonable expectation that he will do so is more than adequately supported by his conduct in this very cycle.

**B.      The Ripeness Argument Fails for the Same Reasons.**

The Secretary's ripeness argument is the mirror image of her mootness argument, and it fails for the same reason. She contends that if Plaintiff's claim is understood as tied to a future (2030) candidacy, it is not yet ripe because his future candidacy is contingent. But this attempts to have it both ways: the claim cannot be simultaneously moot (because it is tied to 2026) and unripe (because it is tied to 2030). The capable-of-repetition doctrine exists precisely to resolve this false dilemma. Indeed, the Ninth Circuit rejected precisely this maneuver in *Porter*, where the Secretary of State likewise argued that a challenge tied to a past election was moot while any challenge tied

to a future election was unripe; the court held that the plaintiff's stated intent to engage in the same conduct in a future election cycle went to whether the controversy was capable of repetition, and "cannot be read to constitute a separate, unripe claim." *Porter*, 319 F.3d at 490. It treats a live, ongoing controversy — the constitutionality of a recurring statutory requirement as applied to a recurring candidate — as justiciable now, notwithstanding that the specific election that gave rise to it has passed.

Plaintiff's challenge is ripe because it rests on a concrete, completed injury: his exclusion from the 2026 ballot under §§ 8902 and 8903. That injury has already occurred; it is not contingent on any future event. The facial challenge to the statute presents "a purely legal question" that is fit for review now, and the hardship of withholding review — leaving the constitutionality of a ballot-access barrier perpetually unresolved because each election cycle outruns the courts — is exactly the harm the ripeness and mootness doctrines, properly applied, avoid.

**C.      The Complaint States an *Anderson-Burdick* Claim.**

The Secretary's central merits argument is that §§ 8902 and 8903 impose only a "slight" burden and therefore survive under the deferential end of the *Anderson-Burdick* sliding scale. That argument fails at the pleadings stage for three independent reasons: the Complaint plausibly alleges a severe burden; a court of this District has already held that this exact scheme triggers strict scrutiny; and the requirement fails even intermediate scrutiny on the allegations as pleaded.

Under *Anderson v. Celebrezze*, 460 U.S. 780 (1983), and *Burdick v. Takushi*, 504 U.S. 428 (1992), the Court weighs "the character and magnitude of the asserted injury" against "the precise interests put forward by the State." *Anderson*, 460 U.S. at 789. Where the burden is severe, strict scrutiny applies and the requirement must be narrowly tailored to a compelling interest. *Burdick*, 504 U.S. at 434. The weighing is fact-intensive and, on these allegations, cannot be resolved against Plaintiff on the pleadings.

***1.      Conditioning ballot access on compelled disclosure of personal financial records is a severe burden.***

The Secretary frames the burden as trivial — candidates "only" need "collect and submit copies of the last five years of their personal federal tax returns." But that framing ignores the



constitutional character of what is being compelled. Sections 8902 and 8903 do not regulate the time, place, or manner of nomination; they do not impose a filing fee or a signature threshold; they do not test a candidate's modicum of support. They condition ballot access on the *public disclosure of substantive, private financial information* — information the federal Constitution does not require any candidate to reveal. That is not a neutral administrative hurdle. It is an extra-statutory qualification for office, and it operates as a severe burden.

The Supreme Court has long recognized that ballot-access restrictions burden "two different, although overlapping, kinds of rights — the right of individuals to associate for the advancement of political beliefs, and the right of qualified voters … to cast their votes effectively." *Williams v. Rhodes*, 393 U.S. 23, 30 (1968). And it has struck down access barriers that condition candidacy on criteria untethered to a candidate's support or qualifications. *See Bullock v. Carter*, 405 U.S. 134, 143 (1972) (invalidating filing-fee scheme and emphasizing ballot-access laws "always have at least some theoretical, correlative effect on voters"); *Lubin v. Panish*, 415 U.S. 709, 716 (1974) (right to a place on the ballot "is intertwined with the rights of voters").

The Secretary's "overall scheme" argument — that under *De La Fuente v. Padilla*, 930 F.3d 1101 (9th Cir. 2019), the Court asks only whether "reasonably diligent" candidates can generally access the ballot — does not carry the day at the pleadings stage. *De La Fuente* involved a signature requirement, a classic content-neutral showing-of-support device. It did not involve compelled disclosure of substantive personal information as a condition of candidacy. The distinction is decisive: a signature requirement asks a candidate to demonstrate a modicum of public support; a tax-disclosure requirement forces a candidate to surrender private financial information to the public as the price of running. The former regulates the mechanics of access; the latter adds a qualification. The Legislature "may not add substantive qualifications" beyond those the Constitution specifies. *Cf. U.S. Term Limits, Inc. v. Thornton*, 514 U.S. 779, 827 (1995). At a minimum, whether this requirement "seriously restrict[s] the availability of political opportunity," *Ariz. Green Party v. Reagan*, 838 F.3d 983, 988 (9th Cir. 2016); *see also De La Fuente*, 930 F.3d at 1105, is a fact question that cannot be resolved on the pleadings.

///

6

### 2.     Griffin v. Padilla *held that this exact scheme triggers strict scrutiny.*

The Secretary's severe-burden argument runs headlong into a decision of this very District. In *Griffin v. Padilla*, 408 F. Supp. 3d 1169 (E.D. Cal. 2019), the court confronted the materially identical predecessor tax-disclosure scheme — enacted in the same legislation, imposing the same five-year disclosure requirement — and held that it imposed a severe burden triggering strict scrutiny. The court reasoned that the requirement "amounts to a functional bar against the ability to cast an effective vote for a candidate who elects not to disclose his or her tax returns," and that it interferes with the associational rights of candidates and parties alike. *Id.* at 1179.

The Secretary asks this Court to reject *Griffin* as "wrongly decided" and "of minimal persuasive value" because it was later vacated as moot. But a decision vacated on mootness grounds retains its persuasive force as reasoning, and more to the point: the mere existence of a considered opinion from this District sustaining a strict-scrutiny challenge to the same scheme is fatal to the Secretary's contention that Plaintiff's claim fails *as a matter of law*. A claim on which a judge of this District has already ruled in the plaintiff's favor is, by definition, not one that no reasonable court could sustain. Whatever weight *Griffin* ultimately deserves is a merits question for summary judgment or trial — not a basis for dismissal at the pleadings.

The Secretary's attempts to distinguish *Griffin* — that it addressed presidential rather than gubernatorial candidates, and that it focused on individual rather than systemic burden — do not withstand scrutiny. The federal constitutional inquiry under *Anderson-Burdick* does not turn on whether the office is presidential or gubernatorial; it turns on the character and magnitude of the burden imposed, which is identical. And *Griffin*'s "functional bar" reasoning speaks directly to the systemic effect of compelled disclosure: it categorically excludes every candidate unwilling to surrender private financial information, a defined class, from the ballot.

### 3.     *The requirement fails even intermediate scrutiny.*

Even if the burden were deemed less than severe, the Complaint states a claim, because §§ 8902 and 8903 do not "reasonably advance" the State's asserted interest in a manner that survives even intermediate scrutiny on the pleaded facts. The State's asserted interest is voter information. But the California Supreme Court has already held — construing the very same legislative scheme

7

— that the interest in informing voters about a candidate's finances does not justify conditioning ballot access on tax disclosure, because "it is the voters who must decide" whether a candidate's nondisclosure "will have consequences at the ballot box." *Patterson v. Padilla*, 8 Cal. 5th 220, 224–25 (2019).

The Secretary dismisses *Patterson* as a "red herring" confined to the California Constitution's open-primary clause. But *Patterson* is not cited to supply the federal rule of decision; it is cited because it demonstrates — authoritatively, and as to this exact statutory scheme — that the State's informational interest is not weighty enough to justify excluding candidates who decline to disclose. That judgment about the strength of the State's interest bears directly on the *Anderson-Burdick* balance. The voter-information rationale the Secretary offers is the same rationale the California Supreme Court found wanting. At the pleadings stage, Plaintiff need only allege facts making it plausible that the State's interest does not justify the burden; *Patterson* shows he has done far more than that.

Moreover, the requirement is not narrowly tailored to the informational interest even on its own terms. It compels disclosure of five years of complete returns regardless of relevance to any conflict of interest; it makes no accommodation for candidates whose good-faith submissions contain minor technical discrepancies; and it imposes disqualification as the automatic consequence of any deficiency, however immaterial. A requirement genuinely tailored to informing voters could permit voluntary disclosure or limit compelled disclosure to information bearing on conflicts of interest. *See Meyer v. Grant*, 486 U.S. 414, 425–26 (1988) (State must employ means closely drawn to its ends in the electoral context). Whether the fit is adequate is, again, a question that cannot be resolved against Plaintiff on the pleadings.

**D.    The Complaint States a Procedural Due Process Claim.**

The Secretary argues that Plaintiff has no protected liberty or property interest in his candidacy under *Snowden v. Hughes*, 321 U.S. 1 (1944), and therefore no due process rights attach. This argument misreads both *Snowden* and the Complaint.

*Snowden* held that there is no due process right to *hold* state elective office — that the ultimate denial of an office one believes one has won does not, standing alone, implicate a

8

protected property interest. But that is not Plaintiff's claim. Plaintiff does not assert a right to *be* Governor. He asserts that once the State established a statutory process for ballot qualification — with defined deadlines, a defined cure period, and defined requirements — it was required to administer that process in a manner consistent with due process, rather than through shifting, contradictory, and ultimately impossible-to-satisfy demands. The distinction between a claimed entitlement to office (unprotected under *Snowden*) and a claim to fair administration of an established statutory process (cognizable) is well recognized.

The Complaint's allegations, taken as true, describe precisely the kind of arbitrary administration that offends due process. The Secretary's office issued a deficiency notice on March 7; retracted and narrowed it on March 10; reverted to the original list on March 12; delayed clarification until March 13; and then — after receiving Plaintiff's corrected submission at 9:17 a.m. on March 16 — waited until 4:50 p.m., ten minutes before the 5:00 p.m. statutory deadline, to assert an entirely new set of deficiencies that Plaintiff had no possible opportunity to cure. Compl. ¶¶ 21–35. Those newly asserted deficiencies were, Plaintiff alleges, factually incorrect. Compl. ¶¶ 37–39. Whether the process actually afforded was constitutionally adequate is a merits question; whether the Complaint *alleges* inadequate process is not close. It does.

The Secretary's contention that any compressed timeline was "of Plaintiff's own making" because he submitted corrected returns on the final day of the cure period is a factual argument — and a contested one. The Complaint alleges that Plaintiff acted diligently in the face of the Secretary's own shifting instructions, and that the Secretary sat on his timely-delivered corrected submission for over seven hours before raising new objections with ten minutes left on the clock. On a motion to dismiss, the Court must credit Plaintiff's version, not the Secretary's.

### E.    The Complaint States an Equal Protection Claim.

The Secretary argues that Plaintiff's "class of one" equal protection claim is inadequately pleaded because it does not allege intentional discrimination and does not identify a true comparator. Neither contention holds up on the pleadings. A class-of-one claim requires allegations that the plaintiff was "intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*,



9

528 U.S. 562, 564 (2000). Intent may be alleged generally, and comparators are ordinarily a matter for factual development, not resolution on a motion to dismiss.

The Complaint identifies a specific comparator — candidate Thomas Woodard — who, Plaintiff alleges, submitted tax returns with deficiencies comparable to those the Secretary attributed to Plaintiff, yet was permitted onto the ballot without the scrutiny directed at Plaintiff. Compl. ¶¶ 42, 44. The Secretary's response — that Woodard's returns were not actually deficient in the same way, and that Plaintiff has not proven the comparison — is a factual dispute about whether the comparators are "similarly situated in all relevant respects." *See Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992). That dispute cannot be resolved on the pleadings; it is precisely the kind of factual question reserved for summary judgment or trial.

As for intent, the Complaint alleges that the Secretary applied shifting and arbitrary standards to Plaintiff while accepting comparable or materially less compliant submissions from others without objection. Compl. ¶¶ 42–44, 64–65. Drawing all inferences in Plaintiff's favor, as the Court must, those allegations support a plausible inference of intentional differential treatment. *Iqbal* requires factual content that permits a reasonable inference of the misconduct alleged; it does not require a plaintiff to prove intent at the pleadings stage or to plead the defendant's state of mind with evidentiary detail. The equal protection claim should proceed to discovery along with the rest.

Notably, the very authority the Secretary invokes to defeat Plaintiff's due process claim confirms that his equal protection claim survives. *Snowden* held that the unequal administration of a fair-on-its-face election statute does state an equal protection claim where the plaintiff alleges "an element of intentional or purposeful discrimination." *Snowden*, 321 U.S. at 8. That is exactly what the Complaint alleges here: the Secretary applied shifting, arbitrary standards to Plaintiff while waving comparable submissions through for others. The Secretary cannot rely on *Snowden* to dispose of Count III while ignoring the intentional-discrimination path *Snowden* expressly preserves.

///

///



## IV.  CONCLUSION

The Secretary's motion asks this Court to hold that a live constitutional question is forever beyond judicial reach, and to resolve contested factual and legal questions against Plaintiff on the pleadings. Neither request is proper. The case is not moot, because it is capable of repetition yet evading review; it is not unripe, because Plaintiff's injury is concrete and complete; and the Complaint states cognizable claims under the First and Fourteenth Amendments, on which a court of this District has already ruled in a plaintiff's favor as to the identical scheme. For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendant's motion to dismiss in its entirety.

Dated: July 14, 2026.

Respectfully submitted,

**DICKINSON WRIGHT RLLP**

*/s/ Eric R. McDonough*

Eric R. McDonough. Esq.
California State Bar No. 193956
3579 Valley Centre Dr, Suite 100,
San Diego, CA 92130
Tel:    858-397-7412
Fax:    844-670-6009
Email: emcdonough@dickinson-wright.com

James E. Tyrrell III, Esq. (*Pro hac vice* pending)
1825 Eye Street N.W., Suite 900
Washington, D.C. 20006
Tel:    202-659-6934
Fax:    844-670-6009
Email: JTyrrell@dickinson-wright.com

*Attorneys for Plaintiff*


DICKINSON WRIGHT
ATTORNEYS AT LAW

### <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 14, 2026, I electronically transmitted the foregoing document with the Clerk of the Court using the CM/ECF System which will provide electronic mail notice to all counsel of record.

*/s/ Mariko R. Gjovig*
Mariko R. Gjovig


DICKINSON WRIGHT
ATTORNEYS AT LAW

12